## STATE *v.* FLAGG.

An indictment for resisting an officer, under sec. 5, ch. 259, Gen. Stats., must allege that the officer was engaged in the service of lawful process, or must so describe the process that it shall appear to be so.

INDICTMENT against the respondent for resisting an officer, as follows:

### STATE OF NEW HAMPSHIRE.

BELKNAP, SS.

At the supreme judicial court, holden at Gilford, within and for the county of Belknap aforesaid, on the fourth Tuesday of March, in the year of our Lord one thousand eight hundred and seventy, the grand jurors for the State of New Hampshire, upon their oath, present, that John Flagg, of Franklin, in our county of Merrimack, yeoman, on the twelfth day of February, in the year of our Lord one thousand eight hundred and seventy, with force and arms upon one William P. Lang, then and there being a constable of the town of Tilton, in said county of Belknap, legally appointed and duly qualified to discharge the duties of said office, and being then and there, in the due and lawful execution of said office in the service of a warrant issued by Charles C. Rogers, a justice of the peace throughout the State of New Hampshire, against said John Flagg, in a criminal case, founded upon a complaint under oath, duly exhibited to said justice against him, the said John Flagg, for the crime of (within the compact part of the town of said Tilton) firing and discharging a loaded pistol, without the command of any military officer having authority therefor, did make an assault, and him, the said William P. Lang, did beat, bruise, and ill-treat, and in the due and lawful execution of his office, in the service of said warrant, did then and there, unlawfully and knowingly, obstruct, oppose, and hinder, and other wrongs to the said William P. Lang then and there did, contrary to the form of the statute, &c.

To this indictment the respondent demurred specially, and assigned the following causes of demurrer, viz.:

1. It is not alleged in said indictment that the warrant alleged to have been issued by Charles C. Rogers was given under his hand and seal.

2. Said indictment does not set out the complaint alleged to have been exhibited to said Charles C. Rogers; nor the warrant which it is alleged was issued by said justice thereon, nor the date of either; nor by whom either of them was signed; nor that such complaint was under oath as the law requires; nor what magistrate, if any, administered such oath, if any was administered; nor by whom such complaint was made or exhibited to such justice.

3. Neither the complaint alleged to have been exhibited to said justice, nor the warrant alleged to have been issued by him thereon, is sufficiently identified or described in this indictment, or set forth in terms, or in their legal effect or substance, or with legal certainty.

4. It is not alleged in this indictment that the criminal case set out in said complaint and warrant was committed in the compact part of

the said town of Tilton, nor that this respondent in either is charged with any crime or offence known to the laws of this State.

5. It is not alleged in said indictment that the officer was obstructed in the service of the process named in said indictment.

6. It is not alleged in this indictment that the process in the hands of said constable was lawful process.

7. This indictment does not set out with sufficient certainty all the facts which constitute and make the offence.

8. Because said indictment is argumentative and informal, and in other respects insufficient; and this he is ready to verify.

Wherefore, for want of a sufficient indictment in his behalf, the said John Flagg prays judgment, and that by the court he may be dismissed and discharged from the said premises in the said indictment specified.

The questions of law were reserved.

*Shirley* for respondent (with whom was *T. J. Whipple*).

I. It is too clear for argument or doubt, that this indictment must be maintained, if at all, upon that clause of section 5, chapter 259, p. 521, General Statutes, which is in these words : " If any person shall wilfully assault " " any officer, or other person duly authorized, in the service. of any lawful process or order "—" in any criminal case, the punishment of which is imprisonment in the common jail, and fine, or either "—" he shall be imprisoned not exceeding one year, and fined not exceeding three hundred dollars."

It is equally clear that under this statute, the sum total—the offence —*must* consist *at least* of the eight items following :

1. The *respondent* must have committed the act.

2. The act must have been an "assault" or, &c.

3. He must have committed the " assault or," &c., " *wilfully*."

4. The " assault or," &c., must have been committed upon an " officer or," &c.

5. The " officer or," &c., must have been actually engaged at the time " in the service of"——" process."

6. That " process or order " must have been a " lawful process or order."

7. This " process " must have been in a " criminal case."

8. That " criminal case " must have been one for which the statutory punishment was either by imprisonment in the common jail, or fine, or both.

Each and every one of these items is a component part of, and *essential* to the existence of, the offence. If seven of these essentials exist, and the eighth is wanting, this offence, as set out in the statute, has no more legal existence than if all the eight essentials were wanting. The offence cannot exist, unless all of these essentials exist in one combination.

The law has been precisely the same since March 1, 1843. This section is an almost literal transcript of section 5, chapter 217, p. 441, of the Revised Statutes. The only changes made are *purely* verbal. Re-

port of commissioners, 1867, chapter 260, section 6, p. 693. The law has been substantially the same since the adoption of our present constitution. Report of commissioners, 1842, section 5, chapter 220; Laws of 1830, title 27, chapter 5, section 15, p. 151; Laws of 1815, p. 331, section 10; Laws of 1805, p. 276, act of February 16, 1791. A comparison of the law last cited and the Federal statute of April 30, 1790, section 22, shows that, with the exception of the necessary change of the titles of officers in the different jurisdictions, the two statutes were derived from a common source, and the "charging words" in one are a literal transcript from the other.

Whatever was of the essence of the offence under the Revised Statutes is so still. Whatever elements then entered into the composition of the offence, must now. Whatever facts were then necessary to make up the offence, must be so now. Whatever was then descriptive of any essential of the offence, is so still. It was then necessary that every indictment should at least show upon its face, with legal certainty, a sufficient description of the whole offence, by setting out with such certainty *every* essential which went to make up the entire offence. If this rule, which goes directly to the essential substance, and not to mere technicality or form, has not been changed, we need draw in aid no precedents; for it is as clear, upon legal principles, as any mathematical demonstration, that this indictment cannot stand. No such change has been made; none constitutionally could be made.

II. We have yet a State constitution; whether or not we shall have, if another legislature runs riot in the field of criminal jurisprudence, as have the last three, rests almost entirely with this court, which in the eye of the law owes its existence to that instrument. The court of last resort is its sworn guardian; the existence of the creator practically depends upon the physical will of the creature. This court should neither be a court of expedients nor of expediency; for trusts, higher and greater than all other human trusts in this State, have been committed to its keeping. That constitution has a bill of rights. Article XV thereof provides that "no subject shall be held to answer for any crime or offence, until the same is *fully* and *plainly*, substantially and *formally*, described to him"—"*fully*," "*plainly*," and "*formally*." These words mean just what they say. Every essential, every component part, every item of the offence must be set forth in the indictment "*fully*," "*plainly*," and "*formally*." The legislature has no more constitutional power to provide that they need not be "*formally*" set out, than it has to provide that they need not be "*fully*" and "*plainly*" set out, or not set out at all. If the legislature can constitutionally provide that an offence need not be "formally" set out, it can logically provide that blank paper shall be deemed an indictment. Every legislative attempt to deprive the respondent of this full, plain, and formal description of every essential and item of the offence sought to be charged, is rotten from end to end with perversion of the fundamental law; and it is the solemn duty of this court so to declare it.

We know that this is an age of unrest, innovation, transition, and revolution, and are unable just now to recollect anything that somebody

has not attempted to " remodel," " reorganize," or " reconstruct," *
* * * * but the last places for any manifestation of this
spirit are the kingdom of heaven, and a constitutional court of last
resort.

. We are painfully aware of the confusion in the cases in this country,
upon the question as to how far the legislatures, under statutes of
jeofails and amendments, may " clip the corners " and " shear off" the
constitutional prohibition. Some of this confusion has arisen from the
marked difference in the clauses of the various State constitutions.

, The courts in some of the States, where the provision is far less
stringent than ours, have taken high and firm ground. *People* v. *Camp-
bell*, 4 Parker C. C. 386, 387 ; *Commonwealth* v. *Mahar*, 16 Pick. 120 ;
*Murphy* v. *State*, 24 Miss. 590–594 ; *Murphy* v. *State*, 28 Miss. 637–654 ;
*Norris* v. *State*, 33 Miss. 373–376 ; *Commonwealth* v. *Davis*, 11 Pick.
437, 438 ; *Commonwealth* v. *Phillips*, 16 Pick. 213, 214 ; *Commonwealth*
v. *Brown*, 13 Met. 368 ; *Commonwealth* v. *Blood*, 4 Gray 32, 33.

The furthest any of these cases have gone is well summarized by an
eminent text writer, in these words : " In other words, the doctrine
seems to be that this provision of the constitution has the effect to
place *beyond legislative abolition* one of the principal common law rules
respecting the framing of the indictment, as regards matters of sub-
stance, though not as regards matters of form." 1 Bishop on Crim.
Pro., sec. 398. " In the United States, there may perhaps have occur-
red some instances of slight amendments in matter of form having
been allowed in the indictment, as at the common law, *but certainly
none in matters of substance.*" Ib. sec. 389.

In all the reported cases which have arisen since the legislative at-
tempts to blot out the " landmarks " and to " drown out " the bill of
rights, our court has assumed, as a fundamental proposition, that no in-
dictment could be cured or amended in matters of substance ; and as
the cases were those in which the amendments proposed were held to
be matters of substance, no decision has or could have been properly
made as to how far formal amendments were consistent with the clause
in the bill of rights. *State* v. *Goodrich*, 46 N. H. 187, 188 ; *State* v. *Ly-
on*, 47 N. H. 418, 419.

We are aware that a few tribunals in other States, apparently forget-
ting that they were sitting as a court, have plunged the whole matter
into a Serbonian bog, from which neither authority nor text writers
have been able to extricate it. In their hands, constitutional guaran-
ties and the " gladsome light of jurisprudence " have disappeared in
something worse than " Humboldt's sink."

III. All the circumstances and facts which constitute the crime
must be stated with such certainty and precision that the defendant
may be enabled to judge whether they constitute an indictable offence
or not, in order that he may demur or plead to the indictment accor-
dingly ; that he may be enabled to determine the species of offence they
constitute, in order that he may prepare his defence accordingly ; that
he may be able to plead a conviction or acquittal upon this indictment,
in view of another prosecution for the same offence, and that there

may be no doubt as to the judgment which should be given if the defendant is convicted.

*Commonwealth* v. *Slack*, 19 Pick, 307; *Commonwealth* v. *Pray*, 13 Pick. 363; *Commonwealth* v. *Wade*, 17 Pick. 399; *Commonwealth* v. *Maxwell*, 2 Pick. 143; *State* v. *Barrett*, 42 N. H. 470, 471, and cases cited; *State* v. *Fitts*, 44 N. H. bottom of page 623 and top of page 624, and cases cited.

These facts, being essentials of the offence, must clearly appear on the face of the indictment, otherwise it would be " like the play of Hamlet, with *Hamlet* left out."

(1.) Let us dig down to the bed rock, and compare the indictment incidentally with essentials 3, 4, and 5, and directly with essentials 6, 7, and 8, in the light of adjudged cases and the reasoning on which they rest. The offence sought to be charged is a creature of our statute, and consists of something: it does not consist in what is done to the individual, but in what is done to the officer· *as such.* The distinction between the two classes of cases rests upon solid and enlightened considerations of public policy. The gulf which separated the rich man from Lazarus was not more marked than this distinction.

(2.) In general, punishments are imposed upon individuals for offences against individuals *as such;* but in special cases society protects the ministerial agents of its will by punishing with greater severity those who commit an offence against an officer *as such,* than those who do the same act to an individual. Whatever is not put clearly within the exception necessarily falls under the general rule. The indictment must show clearly upon its face that the respondent is not charged with an offence against an individual, by showing " plainly," " fully," and " formally" that he is charged with committing an offence against an officer *as such.* In order to do this it must set forth clearly his official capacity at the time; for no one, as a rule, is bound to submit to arrest, or heed warrants, however formal, in the hands of a private person.

(3.) It must also show as plainly on its face that he did the act "wilfully." The statute makes this intention essential to the existence of the offence; and the respondent could have no intention to commit a crime against an officer *as such,* if he did not know that the person he resisted was an officer.

(4.) But if essentials 1, 2, 3, and 4 were fully and plainly set forth with appropriate averments, the offence would still be incomplete. The law does not give special protection to one who holds such office, except when he is *actually* acting in the discharge of the duties imposed upon him by law. Outside of that scope he is merely a private person, and any one may resist him as he may any other unauthorized person. So the indictment, under this statute, must show as clearly that he actually had in his hands and was engaged in the service of a process when resisted.

(5.) But even if essentials 1, 2, 3, 4, and 5 were all properly set out, the very knot of the combination—the keystone itself—is wanting from the arch of the offence, unless the process in the officer's hands was *in fact lawful process.* The fact of such legality is made up of various minor

facts, descriptive essentials, and the legal conclusion thereon. "The indictment must contain a complete description of such facts and circumstances as will constitute the crime. A statement of a legal result *merely*, is bad. BARTLETT, J., *State* v. *Fitts*, 44 N. H. 624.

IV. This was intended to be an indictment for "obstructing an officer" in serving some kind of a process from a justice of the peace, for an offence "against the police of towns." Under our practice the warrant does not set out the offence, but refers to the "annexed complaint;" the officer has both the original complaint and warrant in his hands; he is bound to take notice of their contents, and judge, at his peril, whether they are lawful or not; he has no more authority than a private person, when no complaint has been made according to law, when no offence known to the law is set forth in it, when no warrant has lawfully issued thereon, or when, if lawfully issued, some requirement of the law has yet to be complied with, before he can make lawful service.

The jurisdiction of a justice of the peace in this State is special, and must be shown on the face of the proceedings; nothing can be presumed in favor of the jurisdiction of an inferior magistrate. *Flanders* v. *Atkinson*, 18 N. H. 170 ; *Goulding* v. *Clark*, 34 N. H. 159; *Cate* v. *Cate*, 44 N. H. 211–215.

V. The acts sought to be charged can only be deemed an offence under certain circumstances, and they should appear on the face of the proceedings.

(1.) It should appear, not by way of recital, but by positive averment, that the justice has jurisdiction over the offence. As no justice has any jurisdiction to issue a warrant on a complaint made before another justice, it should appear by like averment that the complaint was "lawfully" "addressed" to said justice.

(2.) As no complaint can be a lawful one which has not been properly signed and sworn to by the person making it, it should appear in like manner that the original complaint was signed by the party making it, and that the magistrate issuing the warrant administered to him the oath prescribed by law. There is no sufficient averment in either of these respects.

VI. The original complaint was undoubtedly intended for an offence against the police of towns, committed in the territory now embraced in the town of Tilton. Whatever may be the general rule, *time*, as well as *place*, was here necessarily an essential of the offence. Both should have appeared by direct and positive averment on the face of the original complaint and of this indictment. But here there is no averment whatever as to time. This defect must have been fatal to the original complaint; it cannot be less so to this indictment. The Gen. Stat. (January 1, 1868) swept from existence the acts which alone, prior to that time, made the act sought to be charged, an offence. For aught that appears in this indictment, this act may have been committed the very day the Gen. Stat. took effect. Let us see how the case would stand under such circumstances. Then the offence sought to be charged in the original complaint must exist, if at all, by virtue of sec-

tions 5 and 17, chapter 252, Gen. Stat.    Section 17 of that chapter is in these words: "The preceding sections of this chapter shall be in force in all towns which shall at any legal meeting adopt its provisions, and in all towns in which any of the provisions of chapter 113 of the Revised Statutes are in force."    Whatever else may be in doubt, it is clear that where this chapter is lawfully in force, it is in force only as a statute law.   If the town of Tilton, at a meeting legally called and held, saw fit to adopt the provisions of this chapter, it had the right and power to do so; if it had the right and power to adopt them, it had, by inevitable implication, the same power to reject them.   It would indeed be strange legislation which should provide that a town might adopt them if it saw fit, but that a *rejection* of them should be deemed an adoption.   If the offence could only exist by the act of the town, it should appear on the face of the original complaint and of this indictment, that the provisions of this chapter became the law by being adopted by the town at a meeting duly called and holden.   *State* v. *Noyes,* 30 N. H. 279, 280.

But it will not be pretended in this case by the State, that the town of Tilton ever made any attempt whatever to adopt them; for the truth is otherwise.   If it be claimed that the town of Sanbornton once adopted them, and that thereby they became the law of the town of Tilton, which was created out of Sanbornton, our answer is, that, if so, both the original complaint and this indictment must show such action of the town of Sanbornton, with an averment that they did so become the law of Tilton; and, as a fact, we claim that the proceedings of the town of Sanbornton were too defective and irregular to justify any action under them, and that a law of this character, if properly adopted by Sanbornton, did not, because Tilton was created out of it, become the law of Tilton.   There is nothing in the act which warrants any such interpretation.   But we suppose that, as in the court below, the State will claim that although Tilton never attempted to take any action in the matter, and assuming that the proceedings in Sanbornton were too defective and irregular to make it the law of that town, section 5 was in force in both towns by virtue of the last clause of section 17.   Such a construction is enough to muddle all human understanding, and results, among others, in the following swarm of legal absurdities:

1. That non-action is action—adoption.

2. That rejection is adoption.

3. That Tilton adopted it because it did not adopt it.

4. That Sanbornton adopted it because it attempted to do so, and failed in consequence of a defect in its proceedings.

5. That the chapter was in force in Tilton by virtue of a failure to adopt it in Sanbornton.

6. That the grant of a power to adopt carries with it no right or power to reject.

7. That a grant of a power to adopt is of itself an adoption.

Our first answer is, that whatever may be the law in these respects, the State should have spread on the face of the original complaint and indictment the facts which made it an offence in Tilton, so that the respondent might be enabled to make his defence.

Our next answer is, that section 17 was merely a condensation of section 11, title 61, act of June 28, 1823, pages 275-6 ; Laws of 1830, sec. 10, chapter 114, page 224 R. S.; and section 12, chapter 120, page 267, C. S.

The court will see that there is a wrong citation in the margin of section 17, G. S. It is apparent that the reference is to section 12, chapter 120, C. S., and not to section 12, chapter 119, C. S. It is equally apparent that section 10, chapter 114, R. S., and section 12, chapter 120, C. S., are both incorrect in citation. They both provide that they shall be in force in towns that see fit to adopt them, and those which have adopted any of the provisions of another act of June 23, 1823 : whereas, an examination of the original laws put in pamphlet will show that a swarm of acts were approved June 26, 1823, and that only one act was approved June 23, 1823, which had no relation whatever to the matters in hand ; while the act referred to by description of its title, with two others, was approved June 28, 1823. Neither the commissioners nor the legislature, in the General Statutes, intended to give to towns the naked right to adopt, with no right to reject. See section 3, chapter 235, G. S.

They did not contemplate any such mockery or child's play as to provide that, whether a town called a meeting or not, or voted to adopt or reject, action and non-action had alike but one legal result, viz., that the provisions would be the law of the town in any event.

The truth and the fact is, that section 17 was intended to provide that the provisions of that chapter should be the law of a town in only two cases : First, where any town, at a meeting properly called and holden, might vote to adopt them thereafter, if it saw fit. Second, where any town had, at any time before the General Statutes, adopted any of the provisions of the Portsmouth act, or the other acts which had followed in its train. Any other construction would blot out section 17. No other construction can reasonably be put upon it.

The case stands, in our view, in this respect, precisely as if the legislature had provided that it should be a like offence against the police of towns, if a man in the compact part thereof should make up faces at the moon, provided that such town, at a meeting duly called and holden, should vote to adopt this as the law, but not otherwise, and where the town had taken no action whatever. The question, then, would stand exactly as if no such statute existed. The complaint and warrant thereon would be for an alleged offence, when neither in fact nor in law any offence could have existed, and would be no more protection to an officer than blank paper.

VII. A criminal warrant is a judicial writ, and must be under the hand and seal of a magistrate ; otherwise it is not lawful process, and cannot protect the officer. It would be a strange state of the law indeed, that, while the officer is without protection in serving a civil writ issued by a justice of the peace, for a penny, because it was not under seal, he would be protected in serving a warrant, not under seal, for a crime the punishment of which was, until lately, death. But this indictment does not aver that the original process was under the hand and seal

of the justice ; nor is there any averment which in legal effect is equivalent thereto.    The word " issued " alone can have no such effect, for that word cannot be construed as an averment that it was granted by a court of competent jurisdiction ; much less can it be held to aver that it was " lawfully " granted by such court.    The standard phraseology of the books is, " duly and legally issued," " the same being," " a lawful process," " legal and judicial process," or " duly issued out of," &c., " was duly issued out of and under the seal of" (giving a full description of the court from which it was issued).    State v. Richardson, 38 N. H. 208, middle of page ; State v. Beasom, 40 N. H. 374 ; United States v. Tinklepaugh, 3 Blatchf. C. C. R. 425–431.

VIII. The indictment must show on its face that the original process was " lawful."    This must be done in one of two ways.    First, by spreading upon the record in the indictment at least so much of the original process, that the court, before whom the trial is had, can see the legal substance thereof as clearly as if it had such original process before it, which we have shown has not been done in this case, with averments that the warrant was lawfully granted by a court of competent jurisdiction, and that all the requirements of the law, pre-requisite to the lawful service thereof, had been complied with.    In several cases in this State and elsewhere, after the other averments, that the officer was obstructed in the due and lawful execution of his office, in the execution of a certain process (identifying it), follows an averment that said process is or was " as follows," or " in the words and figures following, to wit : " the entire process is then set out verbatim ; but in all these cases the indictments have been held insufficient.    The reason is plain : a literal copy of the original process is only one fact ; it does not show that the process was lawful ; it simply shows that the officer had a paper in certain " words and figures " in his hands ; the process might be a forgery, and he might know it ; he might have made it himself, or it might have been issued by a tribunal which had no authority to issue it ; or it might not have been properly issued ; or in form for an offence which in law and in fact had no existence.    The vital essentials descriptive of the offence are wanting in the indictment.

In U. S. v. Stowell, 2 Curtis C. C. R. 155, which was under the statute of 1790, of which ours of 1791, in its " charging words," is a transcript, and in which the indictment set forth that the obstruction complained of was in the service of a warrant " duly issued," &c., " by E. G. Loring," describing his office, &c., Judge CURTIS says : " To constitute an offence under this law, therefore, the obstruction must have been of legal process."    " It is clear, also, that the indictment must show by proper averments that the process was legal, not only in form and purpose, but as emanating from some court or office, empowered by law to issue such process."    " If, as in this case, the officer who granted the process, had by law only a limited and special authority, dependent for its existence upon particular facts, every fact necessary for the existence of that authority must either be averred in the indictment, or appear on the face of the process itself."    " The distinction between such a court and a magistrate having only a special authority,

is settled. In favor of the jurisdiction of the latter the law makes no intendment." Ib. p. 161.

Under this mode, therefore, it is too clear for further argument or illustration, both upon principle and authority, that this indictment is fatally defective.

The *second* mode is by identifying the process, and then stating it according to its legal effect, to wit, by averring that it was " lawful process."

If it is possible to settle anything, it has been repeatedly settled in this State that this indictment is vitally defective in this respect also. *State* v. *Scammon,* 22 N. H. 46; *State* v. *Beasom,* 40 N. H. 373–375; *State* v. *Barrett,* 42 N. H. 470, 471; *State* v. *Fitts,* 44 N. H. 623, 624.

This indictment cannot be sustained without overturning these decisions and the reasoning on which they rest. This indictment does not aver that the original process was lawful, nor does it so describe it that the court can know or say that it was lawful.

IX. It is also essential, first, that the indictment show on its face that the " process," " or," &c., was in a " criminal case:" second, it is absolutely essential that the indictment should show clearly, by appropriate averments, that such " criminal case " was one " the punishment of which is imprisonment in the common jail and fine, or either." The statute has provided an ascending scale for the offences of obstructing an officer, in the service of three different kinds of criminal process. These provisions are in sections 5, 6, and 7, of chapter 259, G. S.

The character of the offence in each case depends upon the *quantum* of the punishment for the crime alleged in the original process to have been committed. The punishment in each case enters into the definition of the offence, becomes one of its ingredients, and is essentially descriptive of it. The indictment must set this forth clearly; otherwise the court could not pronounce sentence, because it could not determine from the indictment which of the particular offences had been committed, nor what sentence it was its duty to impose. This indictment contains no such averment; its defects are fatal; it is a tub without a bottom; it holds nothing.

*Blair,* solicitor, for State.

SARGENT, J. Chapter 259, sec. 5, Gen. Stats., provides that " if any person shall wilfully assault or obstruct any officer or other person duly authorized, in the service of any lawful process or order in any civil case, or in any criminal case, the punishment of which is imprisonment in the common jail and fine, or either, * * * * he shall be imprisoned," &c.

This indictment is for assaulting and beating one William P. Lang, a constable of Tilton, in Belknap county; while engaged in the service of a warrant against said defendant in a criminal case (describing it), and for unlawfully and knowingly obstructing, opposing, and hindering said officer, in the due and lawful execution of his office, in the service of said warrant.

In this indictment it is nowhere alleged that the warrant which the officer was serving, when resisted and assaulted, was *lawful process*, according to the express provisions on which the statute was founded, nor is the complaint and warrant set forth in the indictment so that the court can see that the process was lawful or legal. This point is directly raised and decided in *State* v. *Beasom*, 40 N. H. 367, where it is held that an indictment like this for obstructing an officer in the service of legal process must expressly allege such process to be " lawful process," or so describe it that it shall appear to be so, and that an allegation that the sheriff was " in the due and lawful execution of his office," is not sufficient. That case is entirely decisive of the present. See, also, *State* v. *Scammon*, 22 N. H. 46 ; *State* v. *Barrett*, 42 N. H. 470 ; *State* v. *Fitts*, 44 N. H. 623.

We do not, therefore, need to examine the several other points discussed in the brief for the respondent, as the indictment is not only wanting in form, but is void for lack of substance.

The forms in Bell's Justice and Sheriff 357 (3d ed.), which seem to have been followed in this case, are fatally defective in this particular. *Demurrer sustained.*